MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. JOHN J. CHENAULT.

No. 766.  Decided March 6, 1899.

**1. Assignment—Fundamental Error.**

Where the pleadings and evidence show that plaintiff recovering a statutory penalty could not possibly be entitled thereto, judgment in his favor is fundamental error and may be urged by assignment in the Supreme Court though not assigned below. (P. 504.)

**2. Railways—Crossing in Private Inclosure—Penalties.**

The penalty provided by article 4433, Revised Statutes, is given for the failure of a railway to construct a crossing over its right of way every one and a half miles after demand made in accordance with articles 4429 to 4432, and does not apply to and is not recoverable for failure to make an opening within any private inclosure as required by the proviso to article 4427. (Pp. 503-506.)

ERROR to the Court of Civil Appeals for the Fifth District, in an appeal from Dallas County.

Chenault recovered from the railway company, in the District Court, damages and penalty for failure to construct a crossing over its right of way within plaintiff's inclosure. On affirmance thereof upon appeal by the company, it obtained writ of error.

*Alexander, Clark & Thompson* and *T..S. Miller*, for plaintiff in error.

*T. F. Nash*, for defendant in error.

BROWN, ASSOCIATE JUSTICE.—John J. Chenault brought suit in the District Court of Dallas County, against the plaintiff in error, for the penalty prescribed by articles 4427-4433, Revised Statutes, and for actual damages for the failure of the plaintiff in error to put in a crossing within the inclosure of said Chenault, and upon trial verdict and judgment were rendered against the railway company for $500 actual damages and $5500 penalties under the statutes.

The following are the facts stated by the Court of Civil Appeals: " 'It is agreed in the above cause, as established without the necessity of proof, that, shortly prior to October 5, 1886, the Dallas & Greenville Railway Company instituted proceedings against Mrs. Martha Chenault et al., who were then the owners of the land described in plaintiff's petition, the said Mrs. Martha Chenault being the party through and under whom John J. Chenault is claiming—in which proceedings under the statutes of Texas for condemnation by railway companies, the Dallas & Greenville Railway Company sought to condemn the right of way in question as involved in this suit.

" 'It is further agreed that, upon the hearing before the commissioners, the said Martha Chenault was awarded about the sum of $1600 on account of the damages, and that the Dallas & Greenville Railway Company paid into the hands of the county clerk of Dallas County on account of said award, on October 5, 1886, the sum of $1648, being the full amount of the award and costs incurred.

" 'Both parties filed objections to the award and appealed to the County Court.

" 'It is further agreed that on appeal from the award of the commissioners, judgment was rendered in the County Court of Dallas County, in cause entitled "Dallas & Greenville Railway Company v. Mrs. Martha Chenault et al.," number 3073, on June 8, 1887, as shown by minutes of the County Court. * * * The judgment of the County Court, June 8, 1887, awarded the railway company the right of way and awarded the defendant $1571, and taxed Chenault with costs, the award of special commissioners having been reduced.

" 'It is agreed furthermore that the Dallas & Greenville Railway Company gave notice of appeal, and that the Dallas & Greenville Railway Company perfected its appeal in said cause, and prosecuted an appeal from said judgment, giving a supersedeas bond, which was decided by the Court of Civil Appeals of Texas [evidently meaning Court of Ap-

peals; see 4 Willson Civil Cases, 111], which last named court had final jurisdiction of said cause, and final judgment was rendered therein on the 10th day of May, 1890, in which the said judgment, as shown by minutes of said court, was in all particulars affirmed. On June 21, 1890, defendants Chenault et al. received the amount deposited in court, $1620, and on the 3d of September, 1890, $340, being interest.

" 'It is further agreed that no proof is required as to plaintiff having a title in fee simple to the lands described in plaintiff's petition, subject alone to the easement acquired by the Dallas & Greenville Railway Company, and that the defendant herein is the legal successor of the Dallas & Greenville Railway Company, and entitled to all the rights of but subject to all the liabilities of same.'

"The railroad entered upon the land and constructed its road in the year 1886, presumably after the award of damages was made and the deposit of the amount thereof, together with accrued costs, with the clerk of the County Court. The railway company fenced its right of way in 1890 or 1891, leaving openings in its fences within appellees' inclosure. In March, 1896, these openings were closed and a crossing with gates was substituted. These gates are kept closed, except when opened by persons desiring to cross the railroad. These are all the facts necessary to be stated for the determination of the question now being considered."

The Court of Civil Appeals held that the plaintiff below could not claim actual damages and the penalty at the same time, and that there was no pleading to support the amount of the verdict for the penalties recovered, over and above the sum of $1500, and suggested that if the judgment over and above that sum be remitted, the judgment would be affirmed for that amount, and the defendant in error, in accordance therewith, entered the remittitur as required.

The case is before this court alone upon the right to recover the statutory penalties of $500 per month on the failure to put in the crossing demanded by the defendant in error.

The following articles of the Revised Civil Statutes embody the law applicable to this case:

"Art. 4427. All railway corporations in this State which have, or which may hereafter fence their right of way, may be required to make openings or crossings through their fence and over their roadbed along their right of way every one and one-half miles thereof; provided, that if such fence shall divide any inclosure that at least one opening shall be made in said fence within such inclosure.

"Art. 4428. Such crossings shall not be less than thirty feet in width, and shall be made and kept in such condition as to admit of the free and easy passage of horses, cattle, sheep, hogs, and all other domesticated animals, wagons, and other vehicles.

"Art. 4429. Such crossings shall be made at such times and places as may be demanded by any two or more citizens of the State who either

live or own land within five miles of the place where such crossings may be demanded.

"Art. 4430. Such demand shall be made in writing, of the nearest local agent of such railway company to the place where such crossing or crossings are demanded, and shall state when and where such crossing is desired.

"Art. 4431. No railway company shall be required to complete such crossing as may be demanded under this chapter in a shorter time than thirty days from the day on which such demand is first made, nor shall they be required to make any crossings where they have already left such crossings in each one and one-half miles of their road, except inside of inclosures, as provided in article 4427.

"Art. 4432. Any railway company, upon such demand, shall be deemed to have complied therewith upon making such crossings within 400 yards of the place where they are demanded, within the time herein allowed.

"Art. 4433. Whenever any railway company shall fail or refuse to comply with the requirements of this chapter, after demand is made in accordance herewith, such railway company shall pay to the persons who made such demand each the sum of $500 for each and every month they shall so fail or refuse to comply with such demand, the same to be recovered by suit in any court of this State having jurisdiction of the amount.

"Art. 4434. Nothing in this chapter shall be so construed as to affect the law requiring railroad companies to provide proper crossings at intersection of all roads and streets."

The object of this suit was to recover actual damages and also the penalty prescribed by article 4433, Revised Statutes, for the failure of the plaintiff in error to construct a crossing within the inclosure of the former. It was objected in this court and assigned as ground for granting the writ of error that the facts do not bring the case within the terms of article 4433. This was not assigned as error in the Court of Civil Appeals and is urged here for the first time.

The pleadings and the evidence show that the plaintiff in the court below could not possibly recover according to the statute; to enter judgment in his favor was fundamental error and may be urged by assignment in this court, although not previously presented. Coal Co. v. Lawson, 89 Texas, 403; Dean v. Lyons, 47 Texas, 18.

The question presented for our examination is, does the statute give to the owner of inclosed lands which are divided by a railroad the penalty of $500 a month upon the failure of the railroad company to construct a crossing within such inclosure in compliance with the demand of the owner? A careful study of the Act of 1887, embodied in the articles above quoted, will disclose the fact that the leading purpose of the Legislature was to provide crossings outside of inclosures and independent of streets and public roads, at intervals not greater than one and one-half

miles, so that citizens and their stock might pass freely from one side of the railroad to the other.  The requirement with regard to crossings within inclosures was introduced by a proviso, and the structure of the act indicates that it was more a measure of precaution against affecting an existing right than to provide a remedy or to confer a new right. We do not intend  to intimate that the right does not exist under the statute.

The place at which a crossing may be located and the railroad compelled to construct it, under the articles above quoted, may be designated alone by two or more citizens of the State who live or own lands within five miles of the.place named.  If this provision includes inclosed lands through which a railroad may pass, it will result, (1).that the owner of the inclosure can not require of the railroad company to construct a crossing within his inclosure except by the concurrence of some other citizen who lives or owns lands within five miles of the place designated; (2) the owner of the land can not control the place at which the crossing is to be made, but that must be concurred in by the neighbor who joins in making the demand; (3) any two citizens of the State who live or own land within five miles of an inclosure which is divided by a railroad and in which there is no crossing or opening through the fence of the said railroad may demand of the railroad company that it construct a crossing within the inclosure at a point designated by them, and although the owner might protest against the making of such crossing the railroad company would be bound, under the penalty of $1000 a month, to proceed to comply with the demand; (4) the neighbor who joined with the owner or the two citizens who acted independently of him would be entitled to the penalty prescribed by the statute, although the failure to construct the crossing demanded could not injure them or the public.

The fact that such a construction of the act might result in the absurd consequences above shown is sufficient of itself to show that the Legislature never intended that article 4433 should embrace crossings or openings inside of divided inclosures along the lines of the railroads of the State.  This conclusion is supported strongly by the provisions of the different articles above cited wherever the demand to be made is mentioned; for instance, in article 4431, the railroad company is exempted from compliance with the demand if it has already openings at the distance of one and one-half miles, except within inclosures.  By this it was intended to provide that if there should be a crossing outside of and near to the inclosure, this should not exempt the railroad company from constructing such crossing within the inclosed premises which its road divided.  Again, article 4432 prescribes that a construction of a crossing within 400 yards of the place designated shall be deemed a compliance with the demand.  If article 4429 be held to apply to crossings within inclosures, then the owner of a field which is less than 400 yards in extent along a railroad which divides it would be denied the right of an opening or crossing over the railroad track, if a public crossing was main-

tained just outside the fence, which would be in direct conflict with the proviso to article 4427, "that if such fence shall divide any inclosure that at least one opening shall be made in said fence within such inclosure."

Every provision of the statute with regard to making and enforcing of the demand prescribed in article 4429 is inconsistent with the rights of the owner of the divided lands, or may become seriously detrimental to his rights, as evidenced by the exceptions attached to such provisions. If enforced, the convenience of the public would not be served. The persons who are authorized to make the demand may be strangers to the title, and are permitted to recover a penalty for the failure of the railroad company to make a crossing in the interest of the public.

Under article 4433, the penalty can be recovered only in case the railroad company fails to comply with the demand made under article 4429, which authorizes a demand only by two citizens, without regard to ownership, who live on or own lands within five miles of the place designated. The demand by the owner that the railroad company construct a crossing inside of his inclosure is not authorized by article 4429; he is not embraced in article 4433, which confers upon the person alone who made the demand the right to receive the penalty. For a failure to comply with a demand to make a crossing inside of an inclosure, the penalty can not be recovered.

One who seeks to recover a penalty must bring himself clearly within the provisions of the statute in order to recover. Schloss v. Railway, 85 Texas, 601.

The petition in this case distinctly puts the right to recover damages upon a contract entered into and acted upon by the plaintiff and the railroad company. We have not before us the question of plaintiff's right to recover damages under the Act of 1887 upon the facts of the case, and we express no opinion on that question. The District Court and Court of Civil Appeals erred in holding that Chenault could recover the penalty prescribed in article 4433, for which error the judgments of both courts are reversed and this cause is remanded.

*Reversed and remanded.*