**FORT WORTH & D. C. RY. CO. v. BREWER.** (No. 2937.)

Court of Civil Appeals of Texas. Amarillo. Jan. 4, 1928.

Rehearing Denied Jan. 25, 1928.

1. **Justices of the peace** ⬅90, 174(2½)—**In justice court and on trial de novo on appeal to county court, oral pleadings are permissible.**

In pleading in justice court and on trial de novo on appeal to the county court, oral pleadings are permissible in whole or in part.

2. **Justices of the peace** ⬅174(3)—**That on appeal from justice court there were written pleadings in county court does not show there were no additional oral pleadings.**

Since oral pleadings are permissible in whole or in part in justice court and on trial de novo on appeal to county court, fact that there were written pleadings in county court on appeal did not show that there were no oral pleadings in addition thereto.

3. **Appeal and error** ⬅1091(2)—**If record does not disclose written pleadings in county court constituted whole pleadings, it will be presumed oral pleadings supported judgment.**

Where suit was originally brought in justice court on oral pleadings, and on appeal to the county court written pleadings were filed by plaintiff, if record does not disclose written pleadings constituted whole pleadings, it will be presumed that there were oral pleadings necessary to support judgment, even though the parties repleaded in county court.

4. **Carriers** ⬅20(1)—**Sealing of car was not refusal to deliver goods authorizing recovery of penalty, where plaintiff was not seeking to remove them (Rev. St. 1925, art. 6365).**

In action against railroad to recover penalty under Rev. St. 1925, art. 6365, for failure to deliver a carload of freight where plaintiff, when car was spotted, removed live stock and while he was gone from car agent locked and sealed it after 6 o'clock on Saturday afternoon, sealing of car was not a refusal to deliver goods within article 6365, where at time thereof plaintiff was not seeking to remove remainder of his goods.

5. **Carriers** ⬅20(1)—**Shipper suing for penalty for carrier's failure to deliver goods must bring himself strictly within statute (Rev. St. 1925, art. 6365).**

Shipper suing carrier for penalty for failure of carrier to deliver goods must bring himself strictly within requirements of Rev. St. 1925, art. 6365.

Appeal from Hall County Court; A. C. Hoffman, Judge.

Action by R. R. Brewer against the Fort Worth & Denver City Railway Company. A judgment for plaintiff in justice court was affirmed on appeal to the county court, and defendant appeals. Reversed and rendered.

Elliott & Moss, of Memphis, Thompson & Barwise, of Fort Worth, and Turner, Culton & Gibson, of Amarillo, for appellant.

RANDOLPH, J. This suit was instituted in justice court of Hall county, Tex., by R. R. Brewer against appellant railway company, to recover the sum of $178 penalty for failure to deliver a certain carload of freight.

Plaintiff recovered judgment as prayed for, and appeal was taken by the appellant to the county court of that county. Plaintiff again recovered in the county court, and appellant has brought the judgment in that court before us for review.

[1–3] While this suit was originally brought in the justice court upon oral pleadings, on appeal to the county court the plaintiff filed written pleadings, setting out his cause of action. The appellant raises the objection to the plaintiff's pleading that it is subject to general demurrer in this: That such pleadings do not allege a demand for the freight and a refusal to deliver it, and, to entitle the plaintiff to a recovery, such demand and refusal must have been alleged.

We cannot agree that this contention is correct. In pleading in justice court and on trial de novo on appeal to the county court, oral pleadings are permissible in whole or in part. The fact that there are written pleadings in the county court does not necessarily show that there were no oral pleadings in addition thereto. If the record does not disclose that the written pleadings constituted the whole pleadings, it will be presumed that there were oral pleadings necessary to support the judgment. Fidelity Lumber Co. v. Bean (Tex. Civ. App.) 203 S. W. 782; Rector v. Orange Rice Mill Co., 100 Tex. 593, 102 S. W. 402; H. & T. C. R. Co. v. Southern Architectural Cement Co., 112 Tex. 139, 245 S. W. 644. And this is true even though the parties repleaded in the county court. Barnes v. Sparks, 62 Tex. Civ. App. 451, 131 S. W. 611; Threadgill v. Shaw (Tex. Civ. App.) 130 S. W. 707.

[4] Appellant further alleges that the judgment of the trial court was erroneous in that

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

no demand for the delivery of the car of freight was made of the carrier and no refusal of the demand was shown by the evidence.

It is true that there was no actual demand and refusal of same shown by the evidence. When the car of freight arrived at Memphis, it was spotted at the cotton platform, and late in the afternoon the plaintiff removed his livestock, consisting of horses, from the car and took them off. While he was gone the railroad agent locked the car and sealed it, and when the plaintiff returned he found it in that condition. It appears also that the agent phoned to a brother of the plaintiff to know who the shipper was, or if he knew the party. The reason the agent assigns for calling the brother was that he was in doubt as to whether or not it was permissible to ship an automobile in an emigrant car, and the railroad cashier, who did all of the revising, was gone for the day, and the agent wanted to satisfy himself as to who he was dealing with. Nothing was said in this phone conversation about holding the car for additional freight; the agent just said if the tariff had not been changed recently that there would be an additional charge covering the automobile, and he did not tell the brother that he would hold the car and not permit it to be unloaded until additional freight was paid. He told the brother if there was an additional charge that the collection would have to be made. It is not clear as to whether this conversation occurred before or after the agent had locked and sealed the car. The agent further testifies that it was six o'clock Saturday afternoon when he sealed the car, and, further:

"I sealed the car on the east side to prevent Mr. Brewer from unloading the automobile until I checked up the tariff. I sealed it to prevent the unloading of the automobile until I had a chance to check up the tariff, and I considered he would enter the car on the west side if he wanted to unload it, and I considered I would have a chance to see about that on Sunday morning or Monday. The car was not sealed on the west side. The automobile could not have been unloaded on the west side."

The evidence shows that when the car was shipped from Arlington, Tex., the plaintiff paid the freight on the full car and received a bill of lading. The agent at Arlington told him that he had a right to ship his automobile in the car and gave him a slip of paper, showing a reference to "Supplement No. 22 to Texas Lines Tariff," which authorized such shipment.

The plaintiff further testified:

"Yes; I had that slip with me when I un-. loaded my mules. I knew before I started that it was safe to put the car in that shipment. All I knew is that I did have a right to haul it and the agent at Arlington had told me that; he told me that if I would present that slip here, my goods would be released without further payment. I read the book myself,

and I knew I was right, yet I did not present that slip until Monday morning, and didn't offer to present it until Monday morning. I didn't have anything to say to him. As soon as I presented that slip to Mr. McMicken, he released my car."

The plaintiff made no effort to present this slip or paper, as he had been told to do by the agent at Arlington, until Monday morning about 8 o'clock, when, as he states, he presented it, and made no effort to see the agent until Monday morning. He nowhere testifies that he had any intention of unloading the car Saturday night or Sunday. So far as the record discloses, the plaintiff made his first attempt to obtain the automobile and his other goods on Monday morning, and he then secured them on application to the agent by presenting the slip of paper.

An entirely different question would be presented if the plaintiff had declared his intention to unload his household goods that night or during Sunday and had been met by a locked and sealed car and a demand for more freight. The question here being considered is not one of negligence on the part of the railroad company, but is a suit to recover a penalty under article 6365, Revised Civil Statutes of Texas 1925, which article is, in words, as follows:

"If any railroad company, its officers, agents or employees shall refuse to deliver to the owner, agent or consignee, any freight, goods, wares and merchandise, of any kind or character whatsoever, upon the payment, or tender of payment, of the freight charges due as shown by the bill of lading, the said railroad company shall be liable in damages to the owner of said freight, goods, wares and merchandise, to an amount equal to the amount of freight charges, for every day said freight, goods, wares and merchandise is held after payment, or tender of payment, of the charges due as shown by the bill of lading."

[5] While the act of the agent in sealing the car might, under certain circumstances, have been construed as a refusal to deliver the car, in a suit for damages, yet it not appearing that the plaintiff was then seeking to remove his goods from the car, such act cannot be given that construction where a penalty is sought to be enforced. That this statute is not a remedial statute, but is one penalizing the railroad company, is decided by the Supreme Court in the case of Schloss v. A., T. & S. F. R. Co., 85 Tex. 601, 22 S. W. 1014. This being true, it is required of the shipper suing for such penalty that he bring himself strictly within the requirements of the statute. In this connection, the Supreme Court, in the case just above cited, says:

"Whether it be remedial or penal, it is certain that the appellant's right of action is strictly statutory. Without the statute, he had the right to recover compensation for the detention of his goods after payment or tender of the amount due. This right is not taken

away or modified by this act. But without this statute he could not recover the damages or penalty specified in it. Therefore he must bring himself strictly within the provisions of the acts. Suth. on Stat. Con. § 398; De Witt v. Dunn, 15 Tex. 106; De la Garza v. Booth, 28 Tex. 478 [91 Am. Dec. 328]; Scogins v. Perry, 46 Tex. 111; Murray & Bro. v. Railway, 63 Tex. 407 [51 Am. Rep. 650]. There is no ambiguity in the act, and its meaning must be determined by its own language. There is no room for construction, and no need to resort to extraneous facts for its interpretation. Suth. on Stat. Con. § 219; Engelking v. Von Wamel, 26 Tex. 471; Dodson v. Bunton, 81 Tex. 655 [17 S. W. 507]."

The Schloss Case was cited with approval by the Supreme Court in the cases of M., K. & T. R. Co. v. Chenault, 92 Tex. 501, 506, 49 S. W. 1035; T. & P. Ry. Co. v. Hughes, 99 Tex. 533, 536, 91 S. W. 567.

There being no proof that the plaintiff was seeking the removal of his goods from the car, we cannot presume that he was deprived of an opportunity to do that which the evidence does not show he intended doing, in order to sustain this judgment for penalty.

This holding renders it unnecessary for us to discuss the amount of plaintiff's recovery for three days' detention of his goods.

For the reasons stated, the judgment of the trial court is reversed and the judgment here rendered for the appellee.